UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

GLYNN LETERREL WELLS,

        Plaintiff,                      Case No. 1:21-cv-304

v.                                          Honorable Robert J. Jonker

AMY HASKE et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## **Discussion**

I.    **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Oaks Correctional Facility (ECF) in Manistee,

Manistee County, Michigan.  Plaintiff sues ECF Classification Director Amy Haske and ECF Correctional Officer Unknown Bottrell.

Plaintiff's complaint and the documents he attaches to it are replete with conclusory legal and legalistic statements, citations to statutes and cases, and references to MDOC policies. Plaintiff alleges that he was incarcerated at ECF in 2015 and worked in food service at the prison. In August 2015, Defendant Haske terminated Plaintiff and designated him as unemployable under MDOC policy, which is otherwise known as "00" status.  According to the investigation summary of a grievance Plaintiff attaches to the complaint, Plaintiff was found guilty of a Class II misconduct for theft or possession of stolen property.  (ECF No. 1-2, PageID.33.)  The report further states that "[Plaintiff] failed to fully and actively participate in [his food service] assignment when [he] received a theft misconduct and w[as] terminated for that misconduct." (*Id.*)

Shortly before Defendant Haske terminated Plaintiff, Defendant Bottrell provisionally designated Plaintiff as unemployable and did so using a form that Plaintiff alleges was used only for prisoners who refuse a work assignment[1]—something Plaintiff alleges he did not do.  In response, Plaintiff filed a grievance on Defendant Bottrell alleging that Bottrell used the wrong form and lacked authority to designate Plaintiff as unemployable.  Plaintiff also asserted that Defendant Bottrell committed fraud in violation of 18 U.S.C. § 1001.  In the grievance, Plaintiff stated that he was reporting Bottrell to the FBI.  Plaintiff filed further complaints against

---

[1] Plaintiff attaches a revised copy of the same form to the complaint. (ECF No. 1-7, PageID.49.)  The form applies to several reasons why a prisoner may be designated as unemployable including if the prisoner "failed to fully/actively participate in a Work . . . Assignment once enrolled" in addition to if the prisoner refused to work.  (*Id.*)

2

Defendants Haske and Bottrell with the MDOC's Office of Legal Affairs, the "civil service,"[2] and the United States Department of Justice related to this conduct.

A few months later, in November 2015, Plaintiff met with an assistant resident unit supervisor (ARUS) who allegedly said that he was told to get rid of Plaintiff. The ARUS gave Plaintiff a choice which facility he would be transferred to. Within two weeks, Plaintiff was transferred to the Thumb Correctional Facility, one of the two facilities he requested.

Plaintiff returned to ECF on April 10, 2018. Plaintiff alleges that upon his return, Defendants Haske and Bottrell violated his constitutional rights for nearly a year. According to Plaintiff, Defendant Bottrell interviewed him on April 11, 2018, and said that he looked familiar. Defendant Bottrell referred to Plaintiff's experience in food preparation and assigned Plaintiff to work in a food service position at ECF. Plaintiff left the interview. A few minutes later, Defendant Bottrell summoned Plaintiff. Defendant Bottrell stated that Plaintiff could not work in food service with a history of rape and instead assigned Plaintiff to work as a porter.

It does not appear that Plaintiff clearly understood what Defendant Bottrell's mention of rape referred to. According to the complaint, Plaintiff is incarcerated for multiple convictions including on charges of criminal sexual conduct (CSC) in the first degree and of assault with intent to commit murder. In addition to his convictions, a document attached to the complaint indicates that Plaintiff was found guilty of a sexual misconduct within his prison on April 5, 2018, less than a week before he transferred back to ECF. Plaintiff alleges that prisoners with CSC convictions as well as those with sexual misconducts worked in food service at ECF at the time.

---

[2] Plaintiff presumably refers to the Michigan Civil Service Commission, which has limited authority to oversee civil service positions in the State of Michigan. *See* MiCSC – Civil Service Commission, https://www.michigan.gov/mdcs/ 0,4614,7-147-48041---,00.html (last visited Sept. 14, 2021).

3

Believing that he had been unfairly singled out, Plaintiff told Defendant Bottrell that he intended to file a grievance against him. Defendant Bottrell allegedly responded Plaintiff that Defendant Haske would agree with his decision to classify Plaintiff as a porter. The next day, April 12, 2018, Plaintiff reported both Defendants to the FBI and the United States Attorney's Office. He also filed a grievance against both Defendants on April 15, 2018.

On April 16, 2018, Plaintiff began serving a sanction of 10 days in punitive segregation, apparently for the sexual misconduct he had committed at his previous prison. Plaintiff was assigned to work his first day as a porter on April 17, 2018, but he failed to report because he was in segregation. Corrections Officer Shembarger (not a party) evaluated Plaintiff, commented that Plaintiff went into punitive segregation before starting his work detail and was therefore absent from his work assignment. Shembarger recommended that Plaintiff be terminated from the position. (ECF No. 1-6, PageID.47.) Defendant Haske classified Plaintiff as unemployable on April 18, 2018, because he "refused to attend or failed to fully/actively participate" in his work assignment. (ECF No. 1-7, PageID.49.)

Citing MDOC policy, Defendant Haske also denied Plaintiff's pending request for indigent status because he had been found guilty of a misconduct and discharged from his work assignment. In response, on April 20, 2018, "Plaintiff sent" what he refers to as "enormous complaints against both Defendants to attorneys, [the] Office of Legal Affairs, [the] DOJ, and [the] Warden at ECF." (Compl., ECF No. 1, PageID.7.) On April 24, 2018, he also filed a grievance and "sent out more complaints to legal entities, MDOC Director Heidi E. Washington and [the] Office of Legal Affairs against both Defendants." (*Id.*) On May 4, 2018, Plaintiff allegedly sent an additional complaint to Daphne Johnson, who is identified as the Administrator of MDOC's Office of Legal Affairs in a letter to Plaintiff. (*See* ECF No. 1-3, PageID.38.) Plaintiff sent

4

complaints to MDOC Director Heidi Washington again on May 10, 2018.  Plaintiff alleges that, because he was been denied indigent status, he lost the ability to purchase "soap, toothpaste, shampoo, deodorant, [and] lotion[.]"  (*Id.*)

In the months that followed, Defendants allegedly further frustrated his pursuits. Defendants failed to offer him better job assignments that pay more than a porter position. Defendants denied Plaintiff's request to work two job assignments concurrently.  Defendant Haske denied his request to join the Leader Dog program, which pairs puppies with prisoners who will train them at the prison to become service dogs for those who are visually impaired.  *See* MDOC, *CORRECTIONS – Oaks Correctional Facility (ECF)*, https://www.michigan.gov/corrections/0,4551,7-119-68854_1381_1385-55689--,00.html (last visited Sept. 17, 2021).[3]  Defendant Haske allegedly schemed to have Plaintiff waive his opportunity for reclassification to a different work assignment after serving six months as a porter. When Plaintiff qualified for indigent status in March 2019, Defendant Haske limited the amount of debt Plaintiff could incur from $11.00 to $5.08.  Plaintiff filed grievances complaining of these issues.

Plaintiff alleges that Defendants' various actions were taken in retaliation against him for filing numerous grievances and complaints against them.  He also contends that

---

[3] The Court takes judicial notice of these facts under Rule 201 of the Federal Rules of Evidence.  The accuracy of the source regarding this specific information "cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2); *see also* Paul F. Rothstein, *Federal Rules of Evidence* 49 (3d ed. 2019) (citing *Matthews v. NFL Mgmt. Council*, 688 F.3d 1107 (9th Cir. 2012) (taking judicial notice of statistics on the NFL website that the plaintiff played 13 games in California over 19 years); *Victaulic Co. v. Tieman*, 499 F.3d 227, 236–37 (3d Cir. 2007), *as amended* (Nov. 20, 2007) (finding error where a district court took judicial notice of facts stated in "a party's . . . marketing material" on an "unauthenticated" website because marketing materials often lack precise and candid information and the source was not authenticated)).

Moreover, "[t]he court may take judicial notice at *any* stage of the proceeding."  Fed. R. Evid. 201(d) (emphasis added).  Thus, the Court may take judicial notice even at this early juncture because the Court is permitted to take judicial notice *sua sponte*, Fed. R. Evid. 201(c)(1), and "the fact is not subject to reasonable dispute," Fed. R. Evid. 201(b).

Defendants violated his equal protection rights because he believes he was treated differently than others in some instances because he is a convicted rapist and in other instances because he is black. Plaintiff argues that the failure to grant him indigent status violated his Eighth Amendment rights. Finally, Plaintiff raises claims against Defendants under 18 U.S.C. § 1001.

Plaintiff seeks declaratory relief, injunctive relief, compensatory damages, and punitive damages.

## II.   **Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.    **Retaliation**

Plaintiff alleges that Defendants retaliated against him because he filed numerous grievances and complaints against them. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of

7

retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Here, Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that Defendants' actions were motivated by any of his protected conduct. He merely concludes that because he filed grievances within a few days, weeks, months, or even *years* before Defendants' actions, their actions must have been motivated by his grievances. The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill*, 630 F.3d at 476. This is especially true where, as here, the plaintiff is a prolific filer of grievances. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding

that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews").

The Court further notes that several of Plaintiff's grievances appear to be frivolous. Although the filing of a grievance is constitutionally protected conduct, the right to file grievances is protected only insofar as the grievances are not "frivolous." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). "Abusive or manipulative use of a grievance system would not be protected conduct," *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012), and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002). As the Supreme Court held in *Lewis v. Casey*, "[d]epriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.").

The grievances that Plaintiff attaches to his complaint that are frivolous. For example, Plaintiff filed a grievance misrepresenting the scope of an MDOC form, stating that Defendant Bottrell had committed fraud, and that Plaintiff was contacting the FBI. (ECF No. 1-2, PageID.32.) On another occasion, Plaintiff argued that, because he could not find a reference to an "Assistant Classification Director" (ACD) in MDOC policies, the warden lacked authority to designate an individual to such a position and Defendant Bottrell committed fraud when identifying himself as the ACD. On another occasions, Plaintiff clearly did not meet the MDOC conditions to be eligible for indigent status, *see* MDOC Policy Directive 04.02.120, ¶ B(4) (eff. Dec. 3, 2012), but he filed a grievance contending that he was instead denied indigent status because Defendant Haske retaliated against him. (ECF No. 1-15, PageID.72.) Plaintiff demanded

9

$600,000 in compensation and that the MDOC terminate Defendant Haske. Such grievances clearly abuse the grievance system and are therefore frivolous. Plaintiff's repeated complaints to the FBI, U.S. Attorney's Office, and Office of Legal Affairs reporting Defendants purportedly for fraud further appear to be frivolous.

In any event, even if some of Plaintiff's grievances and complaints are not frivolous, Plaintiff merely alleges temporal proximity between Defendants' conduct and his many grievances. Such allegations are insufficient to state a retaliation claim. The Court will therefore dismiss Plaintiff's retaliation claims.

IV.     **Equal Protection**

Plaintiff alleges that that Defendants violated his equal protection rights because he believes he was treated differently than others in some instances because he was convicted of CSC (ECF No. 1-11, PageID.63) and in other instances because he is black.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws[,]" which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological

objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265–66. "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011). To establish a prima facie case of discrimination under the *McDonnell Douglas* test, a plaintiff must show that (1) he was a member of a protected class; (2) he was qualified for the job; (3) he was subjected to an adverse employment decision; and (4) he was "replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008) (internal quotations omitted).

As the *Arendale* court noted, a plaintiff must show that he was treated differently than someone from outside a protected class who was *similarly situated*. An "equal protection" plaintiff must be similarly situated to his comparators "in all relevant respects . . . ." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011); *see also Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) ("'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"); *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal

11

protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'"). In other words, to be a similarly situated member of another class, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Umani*, 432 F. App'x at 460 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).

### A.   Criminal Sexual Conduct

To the extent Plaintiff contends that Defendants treat him differently because he was convicted of CSC, he fails to state a claim. Prisoners convicted of CSC are not members of a suspect classification because the class is not based on race, religion, or alienage. *See City of Cleburne*, 473 U.S. at 440; *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998). Because prisoners convicted of CSC are not members of a suspect class, Plaintiff's claim is reviewed under the rational basis standard. *See Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff alleges only that he has been treated differently. He fails to allege that there is no rational basis for the difference in treatment. He therefore fails to state an equal protection claim as a person who has been convicted of CSC.

### B. Black or African American

Plaintiff's allegation that Defendants treated him differently from other prisoners because of his race is a closer call. Plaintiff's racial identification as Black or African American is a suspect class. *See City of Cleburne*, 473 U.S. at 440. However, it is not at all clear that Plaintiff is "similarly situated" to the prisoners that he alleges are treated differently.

In addition to identifying as Black, Plaintiff was convicted of CSC and, while in prison, found guilty of theft and sexual misconduct. When he was found guilty of theft, he was terminated from his position in food service. Later, he was given another work assignment as a porter. However, as a result of his sexual misconduct, he was placed in punitive segregation and could not attend his work assignment. Because he could not attend his new work assignment, he was terminated from that position as well. Plaintiff does not allege that other prisoners treated differently from Plaintiff twice lost their jobs after receiving misconducts.

Additionally, in a grievance form attached to the complaint, Plaintiff states that prisoners who participate in the Leader Dog program receive favorable treatment. (ECF No. 1-16, PageID.76.) Plaintiff does not participate in the program. Yet at least some of the prisoners he alleges are treated differently from him are part of the Leader Dog program. (ECF No. 1-5, PageID.43–44.)

In short, Plaintiff is not similarly situated to the other prisoners to whom he compares himself. He has twice been terminated from his job assignment after being found guilty of misconduct. He has not alleged that other prisoners share the same blemished record. At least some of the prisoners who allegedly receive different treatment train service dogs. Plaintiff does not participate in that rehabilitation program. Thus, there are undoubtedly "differentiating or mitigating circumstances" that can explain disparities between Defendants' treatment of Plaintiff and their treatment of other prisoners. *See Umani*, 432 F. App'x at 460.

In addition, although Plaintiff contends that he has been treated differently because he is Black, other allegations contradict that contention. Plaintiff lists several other Black prisoners who, like him, have been convicted of CSC or sexual misconducts, but nevertheless have been permitted to work in food service at ECF. (ECF No. 1-23, PageID.103.) Plaintiff further undermines his equal protection argument by alleging that, as "a brown flesh-and-blood living man," Defendants treated him "less favorabl[y]" than Caucasian "and even other brown prisoners[.]" (Compl., ECF No. 1, PageID.15.) Plaintiff's allegations simply do not support— indeed, they contradict—the existence of a prima facie case of discrimination under *McDonnell Douglas*.

For the reasons described, Plaintiff fails to state an equal protection claim against Defendants Haske and Bottrell. The Court will therefore dismiss Plaintiff's equal protection claims against them.

V.      **Eighth Amendment**

Plaintiff alleges that Defendant Haske violated the Eighth Amendment because he was prevented from purchasing toiletries such as soap, a toothbrush, lotion, deodorant, and shampoo with funds provided to those with indigent status.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345– 46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with

"deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

The Sixth Circuit has recognized that the complete denial of a toothbrush or toothpaste for an extended period may constitute an objectively serious deprivation of basic hygiene needs. *See Flanory v. Bonn*, 604 F.3d 249, 255–56 (6th Cir. 2010) (holding that allegations that an inmate was deprived of toothpaste for 337 days and experienced dental health problems did not constitute a temporary inconvenience and were sufficient to state an Eighth Amendment claim). However, a short-term denial of a toothbrush or toothpaste falls short of constituting such a deprivation. *See, e.g.*, *Matthews v. Murphy,* No. 90-35458, 1992 WL 33902, at *4 (9th Cir. Feb. 25, 1992) (holding that an inmate's allegations that he was deprived of a towel, toothbrush, toothpowder, comb, soap, and other personal hygiene items for approximately 34 days did not rise to the level of a constitutional violation); *Crump v. Janz*, No. 1:10-cv-583, 2010 WL 2854266, at *4 (W.D. Mich. July 19, 2010) (denial of toothbrush and toothpaste for 34 days constitutes a mere temporary inconvenience); *Robertson v. McRay,* No. 03-22823, 2006 WL 2882502, at *7 (S.D. Fla. July 28, 2006) (failure to provide indigent kits containing hygiene items and envelopes, stamps and paper more than half the time over a two-year period did not violate the Eighth Amendment).

Plaintiff has not alleged that he has been completely deprived of access to personal hygiene items; he states merely that he could not purchase them using funds that would have been made available to him if he were on indigent status. But these were not the only funds available to him. Indeed, Plaintiff complains that after he was unemployable for 30 days, he earned $0.74 per day and later $0.84 per day as a porter. Although the MDOC garnished a portion of his earnings to pay his debts, $11.00 a month remained available to him to purchase personal hygiene items among other things. (ECF No. 1, PageID.19.) Therefore, Plaintiff fails to demonstrate that he has been deprived of personal hygiene items at all, much less that prison officials deprived him of such items for a period that would exceed a temporary inconvenience. Consequently, he fails to state an Eighth Amendment claim against Defendant Haske, and the Court will dismiss his claim against her.

VI. **18 U.S.C. § 1001**

Plaintiff's final claim alleges that Defendant Haske decision to designate him as unemployable constituted fraud in violation of 18 U.S.C. § 1001. In his complaint and multiple documents attached to it, Plaintiff arguably also alleges that Defendant Bottrell violated § 1001.

Plaintiff cites a section of the federal criminal code as a basis for relief. As a private citizen, Plaintiff may not force a prosecution under this statute. Plaintiff lacks "a judicially cognizable interest in the prosecution or nonprosecution" of another. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Furthermore, although the Sixth Circuit has not determined the issue, multiple other circuits have concluded that the foregoing statute does not provide for a private right of action. *See Lee v. U.S. Agency for Int'l Dev.*, 859 F.3d 74, 76 (D.C. Cir. 2017) (per curiam); *Coleman v. Sec'y U.S. Dep't of Homeland Sec.*, 649 F. App'x 128, 130 (3d Cir. 2016) (per curiam); *Willems v. Apartment Inv. & Mgmt. Co.*, 72 F. App'x 700, 701 (9th Cir. 2003) (mem.). The Court

is persuaded by their conclusions. Thus, any claims asserted under the foregoing statute will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). Should Plaintiff appeal this decision, he will be required to pay the $505.00 appellate filing fee in one lump sum because he is barred from proceeding *in forma pauperis* by the "three-strikes" rule of § 1915(g).

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:    September 27, 2021          /s/ Robert J. Jonker
                                                      ROBERT J. JONKER
                                                     CHIEF UNITED STATES DISTRICT JUDGE